un **SEALED**  UNITED STATES DISTRICT COURT

United States District Court
Southern District of Texas
FILED
JAN 12 2015
Clerk of Court

SOUTHERN DISTRICT OF _____

UNITED STATES OF AMERICA
V.

Sylvia San Juanita VASQUEZ
Y.O.B.: 1970
U.S. Citizen

SEALED **CRIMINAL COMPLAINT**

Case Number: M-15-0020-M

I, Jean-Paul Reneau, the undersigned complainant state that the following is true and correct to the best of my Knowledge and belief. On or about __March 23, 2010__ In __Hidalgo__ County, in the __Southern__ District of __Texas__ Defendant(s) did,

Knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

in violation of Title __18__ United States Code, Section(s) __3__.

I further state that I am a(n) __Special Agent__ And that this complaint is based on the following facts:
Official Title

See Attachment "A"

Continued on the attached sheet and made a part of this complaint: ☒ Yes ☐ No

_____
Signature of Complainant

Jean-Paul Reneau, HSI
Printed Name of Complainant

Sworn to before me and signed in my presence,

January 12, 2015                                        at        McAllen, Texas
Date                                                                          City and State

U.S. Magistrate Dorina Ramos                              _____
Name and Title of Judicial Officer                          Signature of Judicial Officer

**Attachment "A"**

In February 2010, agents with the Drug Enforcement Administration (DEA) conducted an investigation into a drug trafficking organization responsible for the distribution of hundreds of kilograms of cocaine. As part of the investigation, on February 26, 2010, a Hidalgo County Sheriff's Office (HCSO) Deputy conducted a traffic stop on a vehicle being driven by Luis Martinez-Gallegos (Gallegos) as it travelled on FM 2221 near Mission, Texas. A search of the vehicle resulted in the seizure of approximately eighty-nine (89) kilograms of cocaine. Gallegos was subsequently arrested. Following Gallegos' arrest, Justice of the Peace (JP) Ismael Ochoa, set bail for Gallegos at $2.5 million. An immigration detainer was placed on Gallegos due to Gallegos being a citizen of Mexico with no legal status to be in the United States, and Gallegos was placed in the Hidalgo County Jail.

On March 23, 2010, JP Ochoa signed an order reducing Gallegos' bail from $2.5 million to $50,000. On March 24, 2010, an attorney-surety bond was posted securing Gallegos' bail. After the bond was posted, due to the immigration detainer, Gallegos was ordered removed by Immigration officials and Gallegos was deported to Mexico via Brownsville, Texas on April 19, 2010.

Agents have debriefed several cooperating individuals (CI) who have informed the agents that the reduction of Gallegos' bail, posting of Gallegos' bond and subsequent removal from the United States was part of a scheme implemented to prevent Gallegos from being tried or punished for the narcotics offense.

CI#1 informed agents that CI#1 was involved in narcotics trafficking during 2009 and 2010. CI#1 stated that CI#1 was aware that Gallegos had been arrested on February 26, 2010, while transporting approximately 89 kilograms of cocaine. CI#1 stated that after Gallegos' arrest, CI#1 believed that Gallegos would be facing federal narcotics charges due to the amount of cocaine involved in the offense. CI#1 stated that following Gallegos' apprehension, CI#1 was aware that the initial bail amount had been set at $2.5 million, and that CI#1 approached the Defendant about the possibility of having Gallegos' bail reduced and posted. CI#1 stated that CI#1 knew that Gallegos was illegally present in the United States, and that Immigration Detainer had been placed on Gallegos. CI#1 informed agents that CI#1 wanted Gallegos deported, and that Gallegos wanted to be deported, as well, in order to avoid federal prosecution for the cocaine. CI #1 stated that both C1 #1 and Gallegos knew that even if a bond was posted, Gallegos would be remanded to the immigration officials and deported. CI #1 told agents that he was willing to pay to post a bond in order to have Gallegos deported, however CI #1 could not afford the $2.5 million bond. CI#1 told agents that CI#1 approached the Defendant and informed the Defendant that CI#1 wanted assistance in getting Gallegos' bail reduced and bond posted so that Gallegos would be deported and would no longer be in custody facing a trial or punishment. CI#1 stated that the Defendant then contacted another individual in reference to acquiring assistance with getting Gallegos' bail reduced and a bond posted. CI#1 stated that the Defendant informed CI#1 that a meeting had been arranged with a local attorney who was capable of getting the bail reduced and the bond posted. CI#1 stated that CI#1 provided approximately $100,000 to the Defendant. CI#1 stated that the Defendant told CI #1 that this money was supposed to "pay off" the judge, pay the attorney, pay the Defendant and secure that Gallegos' bond would be posted. CI#1 stated that he/she provided some of the currency given to the Defendant, and that another individual (CI#2) provided the remainder. CI#1 stated that all the currency provided represented proceeds derived from the distribution of narcotics.

CI#2 confirmed to agents that CI#2 was involved in narcotics distribution. CI #2 stated that he/she was aware that Gallegos had been apprehended with the cocaine in February 2010. CI#2 informed agents that CI#2 was aware that CI#1 wanted to get Gallegos deported so that Gallegos would not face federal narcotics charges. CI#2 stated that he/she gave CI#1 approximately $70,000 in order to help pay the costs associated with securing Gallegos' bail reduction and deportation. CI#2 told agents that CI#2 did not initially believe that CI#1 would be

able to make the plan work due to that amount of cocaine and Gallegos' illegal status, however CI#2 later learned that the bail had been reduced, Gallegos' bond posted and that Gallegos had been deported.

CI#3 informed agents that he/she was contacted in early 2010 by the Defendant regarding Gallegos' arrest and detention. CI#3 stated that the Defendant made CI#3 aware that Gallegos had been apprehended with a large amount of cocaine and had no status to be in the United States. CI#3 stated that the Defendant informed CI#3 that the Defendant was trying to get Gallegos' bail reduced so that a bond could be posted and Gallegos would be deported and not have to answer to the narcotics charges. CI#3 stated that the Defendant knew that Gallegos would not be released, but instead would be remanded to the Immigration Officials if a bond was posted. CI#3 stated that in March 2010, CI#3 contacted an attorney who CI#3 knew was capable of getting bail reductions from JP Ochoa. CI#3 informed agents that CI#3 and the Defendant met at the attorney's office to discuss the arrangements. According to CI#3, while at the attorney's office, CI#3 retrieved a bag from the Defendant's vehicle which contained a large sum of currency. CI#3 stated that he/she took the bag into the office and delivered it to the Defendant and the attorney. CI#3 learned that the attorney agreed to assist in getting Gallegos' bail reduced and a bond posted.

Agents debriefed the Defendant who stated she was approached by CI#1 in early 2010 regarding Gallegos' arrest for a large amount of cocaine. The Defendant stated that CI#1 told the Defendant that CI#1 wanted Gallegos' bail reduced so that CI#1 could secure a bond and not face narcotics charges. The Defendant stated that she was aware that Gallegos had no status to be in the United States and that an Immigration Detainer had been secured for Gallegos. The Defendant informed agents that she had contacted another individual in an effort to effectuate Gallegos' deportation. The Defendant stated that this person arranged for a meeting with an attorney who was capable of getting the bail reduced. The Defendant stated during this meeting, the attorney placed a call to a person that the Defendant believed to be a judge. According to the Defendant, following the call the attorney informed the Defendant that the judge was willing to reduce Gallegos' bail in exchange for $10,000. The Defendant stated that CI#3 then retrieved a large sum of currency from the Defendant's vehicle and brought it into the attorney's office. The Defendant stated the currency was delivered to the attorney as payment for arranging for the bail reduction, and ensuring that the bond was posted so that Gallegos would be deported. The Defendant stated that she later learned from CI#1 Gallegos had in fact been deported.